UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE C. DIXON,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

Civil Action No.: 18-11950
Honorable Robert H. Cleland
Magistrate Judge Elizabeth A. Stafford

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 13, 16]

Plaintiff Dale C. Dixon appeals a final decision of Defendant Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income benefits (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Dixon's motion [ECF No. 13] be **DENIED**;

- the Commissioner's motion [ECF No. 16] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Background and Disability Applications

Born December 20, 1966, Dixon was 49 years old when she filed for both DIB and SSI on April 25, 2016.  [ECF No. 9-2, Tr. 24].  Her alleged onset date of disability was amended to June 20, 2016.  [ECF No. 9-2, Tr. 15].  Dixon has worked as a cashier, bookstore technical supplies associate and in-home child care provider.  [ECF No. 9-2, Tr. 37-39].

Dixon alleged disability from an iron deficiency anemia with chronic blood loss, menorrhagia, coronary artery disease, class III angina, obesity, cervical spondylosis, COPD, osteoarthritis of the neck, back, bilateral knees and left foot, panic disorder and major depression.  [ECF No. 13, PageID.959].

After the Commissioner denied her disability application, Dixon requested a hearing, which took place in July 2017, and during which she and a vocational expert (VE) testified.  [ECF No. 9-2, Tr. 34-82].  In a February 2018 written decision, the ALJ found Dixon to be not disabled.  [*Id.*, Tr. 25-26].  The Appeals Council denied review, making the ALJ's

2

decision the final decision of the Commissioner, and Dixon timely filed for judicial review.  [*Id.*, Tr. 1-6; ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). [1]  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

(RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Dixon was not disabled. At the first step, she found that Dixon had not engaged in substantial gainful activity since the amended alleged onset date. [ECF No. 9-2, Tr. 16]. At the second step, the ALJ found that Dixon had the following severe impairments: scoliosis with lumbar radiculopathy; hypertension; hypertensive cardiovascular disease; degenerative joint disease of the bilateral knees; degenerative joint disease of the right ankle; degenerative joint disease of the right mid-foot; obesity; major depressive disease; panic disorder without agoraphobia; iron deficiency anemia; and microcytic anemia. [*Id.*, Tr. 18]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*]

Between the third and fourth steps, the ALJ found that Dixon had the

4

RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b), except:

> [S]he can occasionally balance, stoop, kneel, crouch, crawl,
> and climb ramps and stairs; and she can never climb ladders,
> ropes, or scaffolds.  She requires a sit-stand option after thirty
> minutes, she can only occasionally be exposed to
> environmental irritants, and she can never be exposed to
> unprotected heights.  Additionally, [she] is limited to performing
> work involving simple, routine tasks.

[*Id.*, Tr. 20].  At the fourth step, the ALJ concluded that Dixon was unable to

perform her past relevant work.  [ECF 9-2, Tr. 24].  At the final step, after

considering Dixon's age, education, work experience, RFC and the

testimony of the VE, the ALJ determined that there were jobs in significant

numbers in the national economy that Dixon could perform, including hand

packager, assembler of communication equipment and assembler of plastic

hospital products.  [*Id.*, Tr. 25].

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was

made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc.

Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Dixon argues that the ALJ erred by finding that she can perform light work—a different finding than the previous ALJ decision from October 2013. [ECF No. 13, PageID.966-72]. She next argues that the ALJ erred in giving little weight to the opinion of the treating physician, Jonathan Levi, M.D. [ECF No. 13, PageID.972-75]. The Court finds that substantial evidence supports the ALJ's decision.

## B.

Dixon first argues that the ALJ erred in finding her capable of light work when the prior ALJ found her limited to sedentary work. [ECF No. 13, PageID.966-72]. She cites *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997), as holding that, absent new evidence, the ALJ is bound by the findings of the previous decision. [*Id.*, PageID.966-72]. And Dixon argues that the ALJ's conclusion that new and material evidence supports a change in her RFC is belied by the medical record. [*Id.*]. These

6

arguments are off the mark because they rely on an outdated interpretation of *Drummond*.

The Sixth Circuit recently clarified that, despite language from *Drummond* suggesting otherwise, the principles of finality and consistency do not prevent an ALJ from "giving a fresh look to a new application containing new evidence." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018). Here, Dixon's amended alleged onset date is June 20, 2016. [ECF No. 9-2, Tr. 15]. So while the ALJ was allowed to consider the 2013 decision, she had to evaluate Dixon's new applications in light of the new record, and then make a new finding. *Earley*, 893 F.3d at 933-34. Thus, the relevant question is whether the ALJ's finding that Dixon has an RFC for modified light work is supported by substantial evidence.

For her fresh review, the ALJ had to consider every medical opinion of record. 20 C.F.R. § 404.1527. The ALJ accorded the greatest weight to the state agency consultant, Twaide Langham, D.O., who found that Dixon was capable of light work with other restrictions consistent with the ALJ's assessed RFC. [ECF No. 9-2, Tr. 23; ECF No. 9-3, Tr. 111-15, 130-32]. The ALJ found Dr. Langham's opinion to be "consistent with the claimant's normal myocardial profusion [*sic*] testing, her capability for exertional and postural activities during her consultative examination, and her care for her

grandson throughout the relevant period." [ECF No. 9-2, Tr. 23]. This reasoning is supported by the record.

First, the results of May 2016 myocardial perfusion imaging with a stress test were normal. [ECF No. 9-14, Tr. 665-66]. Second, after an independent medical examination in June 2016, Bina Shaw, M.D., described Dixon as having pain in her neck, back and both knees with movement, but having full ranges of motion in her cervical spine, shoulders, elbow, wrists, hands, hips, knees, ankles and toes. [ECF No. 9-16, Tr. 760-63]. She had no neurological deficits, no SI joint tenderness, no muscle spasm and her straight-leg raising test was negative. [*Id.*]. Although Dixon had mild crepitus in both knees, Dr. Shaw reported that there was "no swelling, redness, warmth or tenderness on palpation of the knee joint." [*Id.*]. She could "get on and off the [examination] table and dress up by herself." [*Id.*]. Her gait was steady, and she did not use her cane in the examination room. [*Id.*]. When she used her cane, she walked without a limp. [*Id.*].

Dr. Shaw concluded that Dixon could sit, stand and walk for up to four hours at a time; could partially bend at least 40 degrees; "should avoid frequent squatting, kneeling, climbing and constant long-distance walking"; and lift at least 20 pounds. [*Id.*]. Because Dr. Shaw did not opine about

8

Dixon's daily capabilities, the ALJ gave her opinion only partial weight.
[ECF No. 9-2, Tr. 23].

Third, as noted by the ALJ, Dixon reported in 2015 that she kept busy
by caring for her infant grandson four to five days a week, and she
continued to care for him and other grandchildren into 2017.  [ECF No. 9-
10, Tr. 430, 438, 453; ECF No. 9-18, Tr. 849].  The ALJ also noted that a
June 2016 x-ray revealed minimal degenerative joint disease in both knees.
[ECF No. 9-2, Tr. 22; 9-16, Tr. 768].

This evidence supports the ALJ's assessment of Dixon's RFC.  In her
motion, Dixon cites other evidence and argues that portions of the record
should have been interpreted differently.  [ECF No. 13, PageID.969-71].
But when, as here, the ALJ's decision is supported by substantial evidence,
"it must be affirmed even if the reviewing court would decide the matter
differently, and even if substantial evidence also supports the opposite
conclusion." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286
(6th Cir. 1994) (citations omitted).

## C.

Dixon's treating physician argument is also unavailing.

In May 2016, Dr. Levi completed a medical assessment stating that
Dixon could occasionally lift and carry 10 pounds; could stand and walk

one hour; could sit four hours with leg elevation; required four unscheduled breaks each day, and lasting one hour; could never stoop, crouch or climb ladders; could rarely hold her head static and occasionally look up or climb ladders; would require more than four monthly absences; and had symptoms severe enough to constantly interfere with her attention and concentration.  [ECF No. 9-16, Tr. 754-56].  The ALJ gave this opinion little weight.  [ECF No. 9-2, Tr. 23].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  When an ALJ gives less than controlling weight to a treating physician's opinion, the ALJ must give "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

The ALJ's reasoning must "be sufficiently specific to make clear to any subsequent reviewers the reasons for the weight the adjudicator gave

10

to the treating source's medical opinion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (citing Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5).  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.

Here, the ALJ found that "Dr. Levi's opinion greatly overstates the claimant's limitations, given her full strength and steady gait during examinations, as well as her normal perfusion testing and her care for her grandson throughout the relevant period."  [ECF No. 9-2, Tr. 23].  The Court agrees that the findings from Dr. Shaw's independent medical examination, Dixon's May 2016 normal myocardial perfusion testing, and her consistent care for her young grandson undercut Dr. Levi's opinion that she is severely limited.

Arguing otherwise, Dixon cites evidence that she was diagnosed with iron deficiency anemia with chronic blood loss, coronary artery disease and angina.  [ECF No. 13, PageID.972, citing ECF No. 9-14, Tr. 634-38, 646].  But these diagnoses alone do not dictate a finding of disability or for greater physical restrictions.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.

11

1988) (a diagnosis says nothing about its disabling effects).  And Dixon

bears the burden of showing that she required a more restrictive RFC.

*Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

Dixon's argument is also undermined by some of the other records

she cites.  [*See* ECF No. 13, PageID.973, citing ECF No. 9-17, Tr. 785,

798, 800-01, 814, 825-26].  In an August 2016 assessment, Bryan Zweig,

M.D., questioned whether Dixon's chest pain was cardiac in nature since

the stress test taken that day was "completely normal."  [ECF No. 9-17, Tr.

785].  He was not sure if Dixon had true angina and pondered whether her

symptoms were instead from sleep apnea.  [*Id.*].  She was diagnosed with

sleep apnea in April 2017.  [*Id.*, Tr. 826].  And in February 2017, Surafel

Gezahegne, M.D., reported that Dixon's episodes of wheezing, shortness

of breath and cough were likely because of asthma, and that she was

"doing well" with weekly albuterol treatments. [*Id.*, Tr. 814].

The ALJ's stated good reasons for giving little weight to Dr. Levi's

opinion, and those reasons are supported by substantial evidence.

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Dixon's

motion for summary judgment [ECF No. 13] be **DENIED**; that the

Commissioner's motion [ECF No. 16] be **GRANTED**; and that the

Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C.

§ 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: May 17, 2019                                    United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on May 17, 2019.

s/Marlena Williams____
MARLENA WILLIAMS
Case Manager